Welcome to the United States Court of Appeals for the Sixth Circuit. I'll remind you if you represent the appellant and wish to reserve some time for rebuttal, it's helpful if you let us know that at the outset, even if you've already made your arrangements with the clerk. With that, the clerk may call the first case. Case 12-S is the Cordon American Bank FSB v. Cornerstone Community Bank. Oral argument is 15 minutes per side. Mr. Brown, please go ahead. May it please the Court, I am Scott Brown of the Chattanooga, Tennessee Bar, representing the appellant, Cornerstone Community Bank. I would like to reserve three minutes of my argument for response to opposing counsel. First, thanks for granting oral hearing in this case. We appreciate it. Second, I need to call the Court's attention to an erroneous statement in a reply brief of ours where we referred to two sweeps as being identical. In fact, we'll get to that later about sweeps, but there's a slight error on page 17 of our reply, which is page number 22. There's also an error on the appellee's principle brief on their page 6, which is the Court's page 15. They recite that they gave us a demand for payment in April of 2009. Actually, that was April of 2011. Finally, I would invite the Court's attention to the trial record page of notification number 66. It's a copy of a bank statement that was submitted by the appellee back in the trial court. It refers to a bank statement, and it calls it the name of the customer, and it calls it a CNA premium trust account. Well, in fact, that began years earlier, perhaps that way, but at the time of all these events, it was not a trust account. It was an ordinary operating account, and I expect you all have either already seen that or somebody has probably had a look at that, but that's the explanation. There's never been an issue about that particular checking account being a trust account. I don't think you've started my timer yet. Thanks for letting us know. Better to be lucky than good, I guess. It might have been a statement against interest. It might have been true. Excuse me. I want to just talk about the big picture in this case. I can't talk about this in 15 minutes, or you don't want to hear it anyway, and I assume you all have some familiarity with the facts already. Sure. I kind of assume you all understand how a sweep account, how a bank sweeping operates, or at least in this instance, the way it operated is my bank's customer we called USIG. They were an insurance agency. They had their bank account with our bank. They also had a line of credit with our bank where we would advance our bank, would lend them money to operate on. As money came into their checking account from various sources, whatever was there at the end of the business day, our bank would leave $50,000 there in their checking account and would sweep, move the remaining balance over as a credit against their loan. The next day when checks were presented that were greater than the amount of money in that account, we would sweep cash back from the loan, as it were, back over into the checking account. So this is just a back-and-forth series of transactions that went from about 2005 until the day of the bankruptcy of this company, which was April, I believe, April 22, 2009. So one thing I'd be interested in is how you read this language saying that the premium insurance financing statute applies. So that's really the debate here, how that statute interacts with Article 9. With our what? Article 9, UCC. So you've got this language here that says, this chapter does not apply to a transfer of an interest in or an assignment of a claim under a policy of insurance, right? Are you familiar with that? That's what that says, yes. So how do you construe that? I mean, I'm interested in what you think, just in terms of the words and how you read the words, and I'm also interested in functionally what the point of that is, and that would be interesting to me because I— Let me jump over to what I think the point of that is. Okay. Insurance contracts are special, and there are specific contracts between parties that know each other that deal with each other. Article 9 covers sort of the vast range of transactions that people may not have specific knowledge of. That particular phrase, I think the way you read it is it says it doesn't apply to an interest in or assignment of a claim under a policy. So claim being, you know, my roof was destroyed in a hailstorm. Yes, sir. Okay, so let's say linguistically that makes sense. I'll accept that. Tell me why they would have done that. Why would they have a rule about security interest in relation to collecting on roof damage insurance claims? Well, a lender on your house would want to make sure they got included on the check so they could be sure you fixed your house. And that's a specific kind of transaction, and I think most UCC states have that sort of provision. Maybe I'm not expressing this very well, but I think my argument would be that section talks about claims under an insurance policy. A claim. It doesn't talk about assignment of some other kind of interest in the insurance policy like the right to receive a refund premium. That's how I read that. If they had wanted it to be assignment of an interest in other than a claim, I think they should have said or interest in an insurance policy or assignment of a claim under an insurance policy. So that's the best I can do on that one. Well, I mean, it's not obvious, it seems, that... Couldn't you read the subsection A to mean transfer of an interest in a policy of insurance rather than transfer of an interest in a claim under a policy of insurance? Well, I think our court did read it the way you just stated it. Yeah. Well, I mean, isn't that a permissible reading? I think it's one of two permissible readings. I think the other permissible reading is it needs to be an interest in or claim under a policy of insurance. And the key word to me is claim. But haven't courts sorted this out at all yet? I mean, I haven't seen any authority here, but surely we're not the first one to face this. No, I don't think so. And I think that... Well, another way of putting Judge Ketledge's question, is there a single court that supported your reading? Not yet. Okay, so hope springs eternal. It does. Yeah. You all... But what you all are being asked to do in the big picture, I think, is because we're a bank and we receive deposits and we don't know what they are, nobody tells us that it's special, nobody tells us they have a lien on it, and we let our customer do with that deposit as our customer will. And we're a bank and we do that. That's how banks operate. That's the free flow of cash. Now, if there's a secret lien on a deposit... Well, I don't know how much secrecy there is when you've got this Tennessee Code provision, 5637.112, which specifically says you don't have to file. I mean, that puts you on notice that if you're anxious about this point, that statute's there. That gives a bank who has a sweeping agreement reason to check out what's going on. Well, but so that would put the banks under a duty to examine every transaction that any insurance agent customer has. Well, it seems like the statute sort of puts you in that, places you in that situation, and whether it's a good idea or not would seem to be a legislative decision. Well, there are a couple of things I'll say about that. First, the Tennessee Supreme Court doesn't like this chapter in our code, and they refuse to enforce it in the only case that I'm aware of that they've ever decided on it. Well, I don't like it either, but I think we probably have the same view. It's really complicated. It's really hard to read. I think it is. And the other observation I would make is the bankruptcy court in the case of Expresso commented that they refused the premium finance company relief because the premium finance company had not given notice. And in that case, it was to an insurer who actually did get the premium. So the theory being that this is a chosen action, a claim in or an interest in an insurance policy. It's a chosen action, and your perfection of that under common law, which the bankruptcy court thought applied, is by giving notice to whoever owes the claim. Well, this case kind of reminds me of, you know, walking into a thicket you never encountered before because, you know, I started out with no knowledge about this area of the law, and I'm not sure I've improved my situation a great deal through preparation for the case. But when you look at what little authority there is, it seems like kind of the big picture way to look at this case may be that these sorts of specific statutes creating the security interest and unearned premiums, that these sorts of statutes control over the more generalized provisions of Article IX or something like common law bankers' lien. Now, am I reading that right as far as kind of what the thread of authority seems to be? I think most other courts that have considered this issue would probably agree with you. Okay, now, so why is that a bad... I mean, what's wrong with that way of looking at this case? What's wrong with it is the bank doesn't know... I mean, other than that, you don't win under that way of looking at the case. Well, that's the big thing that's wrong with it. But the problem you've got is you've got, in this case, you've got an innocent bank, and that's us, and we're having to pay a judgment to this other bank that knew what they were doing. They knew they were wiring this lien to money, and they didn't tell us. And then they didn't tell us for two and a half years after that. And what's the source of their duty to tell you? The source of their duty? The legal source of their duty to tell you. It would be the same. It would be affording us an opportunity to protect their position. It's Article IX, right? I mean, normally Article IX means you have to give notice to the world if you have a security interest. But your problem is the Tennessee statute seems to say that's not true with respect to uninsured. The Tennessee statute says you don't have to file to perfect the interest. So what else? What's the other? I mean, there's got to be something else that would be a source of that duty to notify. I think if you read the Tennessee statute carefully, you'll find that there's a specific group of protected parties under the statute, and they're protected from a specific description of other parties, trustees in bankruptcy, creditors. Subsequent purchasers. Subsequent purchasers. Why wouldn't that be exactly your claim? I think it would be a subsequent purchaser claiming under one of those described groups. Maybe. When I look at this, I would have thought you were subsequent and you were purchaser. That's what I would have said. We are. We're in effect a BFP of every time they take the money and we move it over to their credit. Just to get the point I'm asking, that's a covered group here. If you look at the Tennessee statute, it's saying it protects American Bank over you if you're a subsequent purchaser. Why shouldn't that specific rule govern here? If that's the way you're reading it as a subsequent purchaser, I'll be collateral. Let me just read it. No filing of the premium finance agreement shall be necessary to perfect the validity of the agreement as a secure transaction as against. Now there's a list of people. One of them is subsequent purchasers. Well, I agree that's what the statute says, and that says no filing shall be necessary to perfect. What section are we talking about here? 5637.112. Let me try to come at this, if I could ask you this question in two different ways. I'm interested in the other side's view of this as well. So Judge Kethledge pointed out that you could look at this Article 9 exception, and I think you acknowledged there were two reasonable ways to read it. One of them, Judge Kethledge said, was you could say the carve-out applies when it's a transfer of an interest in a policy of insurance. So that's one possibility. It's the hurtful possibility we all acknowledge, but I think you acknowledged fairly that there were two different ways to look at it. That's a broader one. There's a narrower one. Why would it make sense to adopt the broader one? I realize it's hurtful to you. Given this very specific Tennessee statute, what I've been reading from, 5637.112, why wouldn't... We want to make all these statutes, the words make sense. So why doesn't that support Judge Kethledge's option? I'm not sure, Your Honor, we can make all these words make sense, particularly in this statute. But I'm proposing a way that does make sense. That's just what I'm doing. You have to tell me why what I said doesn't work when it comes to the words. I need to cogitate on that. Okay, well, let me try this a whole different way. Let's say this Article 9 carve-out means nothing. So just take it... Let's pretend that whole sentence does not exist. So now think about the case this way. You've got the Article 9 rules, and you have to perfect, and you've got to give notice, and then you've got a rule that's very specific about financing these insurance agreements. If that's all you had, wouldn't you... This is a little bit of variation on Judge Gibbons' question. If that's all you had, wouldn't you respect the more specific... The specific would control the general? Yeah. I think that's a general... As a general proposition of the law, I'd agree with that. But what else is there to say if that's true? I have other things. We have other defenses than just the statute. We didn't take their money. We gave their money back. Every time we swept back money into their account and ran their balance up on their credit line, we gave their money back. So we didn't take it. We didn't convert it. What do you mean you didn't... Wait, how is it when it's... American Bank puts it in here, and then it's... You take it? That's not a conversion? I don't understand how that's not a conversion. We make a book entry in the bank and we move the balance above $50,000 over onto the debt balance. And then a day or two later, we advance some more money and we make this book entry and move it back to the checking account. Yeah, but I mean... Well, go ahead. Well, the problem is money in this case is not fungible because they have an interest in their view. They have a perfected security interest in certain funds that are like a raise and only in those funds. And when you guys sweep that out, then you're saying, well, we put other money in the account. Well, that doesn't help them in the preference action, which is what they got zapped in, which is why they're here because they didn't have the same security interest in these funds you used to replenish. You know? So, I mean, the money's not fungible. I understand your point, but that's why we keep circling back to the statutory issue. The final comment I would make, I'm not sure how far over I am, but it's a bit, is that what we did, we don't think, was the cause of their misfortune. The cause of their misfortune is the insurance agent just didn't remit the premiums to the insurance company and had the opportunity to do that repeatedly after these events. Okay. Is that... That's... You'll have, I think, you reserve some time for rebuttal. Try to, yes, ma'am. Okay. Thank you. All right. Mr... May it please the Court, Kenneth O. Stracher for the Appleby American Bank FSB. This case presents nothing more than a dispute over competing security interests. Because American Bank at all times had a senior security interest in the property at issue, which are the funds that were wired in. Cornerstone's exercise of dominion and control over those funds when it applied the funds to the line of credit loan constituted conversion of American Bank's collateral, which then led to the loss to the trustee in the USAG bankruptcy case. Just to anticipate one of the questions you raised about the exclusion, the... As you probably noticed from our brief, the courts that have addressed that issue as to whether the exclusion applies to insurance premiums have been unanimous. There's no... Yeah, but, you know, just to push back a little on that, not a lot of analysis, and I think the analysis that's there is adding words that aren't in the statute. They seem to be saying it's like a related to test. If it's related to a policy of insurance, and that's just not what it says. And I think you're back to this, the way Judge Kethledge was framing it, but I do think it's just as plausible to say it applies to a transfer of an interest in a claim under a policy of insurance and an assignment of a claim under a policy of insurance. I think that's quite legitimate linguistically, and if the word is claim, I don't think this has anything to do with an insurance policy claim. You would agree with that, right? Well, the statute, I think, says a transfer of an interest in or assignment of a claim. Right, but just to build, I mean, to clear out the underbrush here, you would agree with Judge Sutton's point that if the correct reading is interest in a claim under an insurance policy, you would agree that that's not what you have here. Right, I would agree with that. So you need, at a minimum, you need to get this other interpretation, and whether you meet that is another question. Well, again, I'm trying to get, I mean, because the statute itself has this alternative. It's an or, it's not this. Right. And it says a transfer of an interest in, and I think the case that have decided this issue have relied on the language that says an interest in, and they've made their cases that deal with this issue have distinguished between interest in proceeds, which can be subject to a security. It's like the example someone gave of a house burning down. Now that situation would be an insurer with a mortgage on the house will be a lost payee under the insurance policy. And that would be something that would be covered by the UCC because those would be proceeds of an insurance policy of a claim. But what the courts who have ruled on this issue have, going back to, you know, the case in Maine, the Score Mountain case, talk about the interest that an insurance premium financer has in the policy. Not a claim, but an interest in the policy. And they have found that those unearned premiums constitute interest in the policy. How is that? I mean, can you explain that? It's not obvious how unearned insurance premiums are a, quote, interest in the policy of insurance. The, it's the, I think they get there because of the nature of insurance premiums and insurance, unearned insurance premiums and the way that they are a kind of a special wasting asset. And when you finance insurance premiums, usually there's a down payment made in the typical form. So you're always ahead of the curve  your unearned premiums, which are being burned off every day of the policy, is in effect, are being reduced. But that is your collateral. So you have an interest in that policy and the premiums. And that's, I think, how they reach the point because you have, since you paid for the insurance, in effect, and that the unearned portion of, which is a unique asset. I mean, it's only something that would come up in premium finance. And if you'd have that kind of a situation where you're paying in advance and your collateral constitutes the unearned portion of it. Normally, if, say, a person does that in premium financing, cancels the policy, he gets back the premiums, goes back to him. In the case of how these things work, it goes to the premium financer as long as there's notice given to the insurance company and everyone else. And I think, obviously, the UCC wasn't drafted with that particular point in mind. But obviously, the courts that have looked at the UCC and the special deference in the comments about insurance policies being a unique asset, unique type of thing, have said that these things are dealt with separately. And the... Am I right in thinking that none of these cases are dealing with this linguistic debate we're having? They really just seem to say, ah, the word's insurance, it's related to insurance, that's all we need here. I don't think it goes, I don't think it's that shallow. I mean, I think some of the courts have looked at the idea of, as I just said, an interest in a policy is separate from a claim in a policy. And it's certainly separate from the proceeds of an insurance policy. Well, how about... So the thing I asked your friend on the other side was I said, you know, let's see if there's a way to decide this case without even looking at this difficult, carve-out sentence. Let's pretend that sentence doesn't exist. Okay. On the one hand, you have Article 9, and on the other hand, quite helpful to you is this very specific statute, which you seem to comply... Well, you don't have to comply with it, but you're invoking. Normally, the specific trumps the general. But then it seems to me the response they could make is all this specific statute does is allow you not to give notice, not to file, to perfect in the normal Article 9 course. But it's not clear that it tells you priorities. And if this specific statute doesn't talk about the rules of priorities, and we assume, for the sake of argument, Article 9 still applies, and it's general rules that haven't been trumped by specific things, wouldn't you be stuck then? Not at all. Okay. I'm really interested in this answer. Why? Well, the statute, the Tennessee Premium Finance Statute, which is similar to the statutes in 38 other states,  security interest is effective against all subsequent, all other creditors, and pledges, and so on and so forth. That's another way of saying it has its priority rule. Yes. That's what it means when you say it's effective against all subsequent trustees, bankruptcy trustees, pledges, encumbrances, and any successes or signs of them. Why isn't that the way to think about this case instead of the common law, which is what the lower courts seem to think? Well, the court below took the clearest concise way saying, look, under this statute, you have a perfected security interest when these things happen. When you wire the money, there's a policy in place, you have the agreement with necessary terms. So you're perfected as of that point. Under any normal law? I'm trying to understand why. I know it's difficult to disagree with a lower court decision that supports you, so I'm not asking you to throw it overboard, but I'm asking you for what's the best answer. And why isn't the best answer that the lower court was wrong? The common law has nothing to do with this. If you're telling me this specific statute says you don't have to give notice and then it establishes a priority rule and subsequent purchasers include this bank, I would have thought the common law has zero to do with this case. Isn't that, is that not the best answer? Or, be honest, I just don't, I don't know enough about this area of the law. The issue, I don't think you have to go to the common law principles. I mean, I think the the answer is in the statute itself. It says, the statute says you have priority over all other creditors and you don't have to file anything and you know the fact that the UCC itself recognizes the fact that if there are other statutes. Now has any of these cases that support you gone the route I'm proposing? Because don't a lot of them talk about the common law? They kind of say, well, article 9 doesn't apply, this specific insurance premium statute doesn't tell us all the answers, so they sent their own answers, that's why we go to the common law. Isn't that been the traditional reasoning for that? No, I mean, actually, actually the cases that have decided that issue have all said that the premium financer has priority over the bankruptcy trustee or competing bank or anyone else like that. There are cases that are cited in the trial court's opinion in which it states that in the absence of article 9 doesn't apply at all, then you go look at common law principles such as first in time, first in right, and that's what the trial court did. In her first opinion, though, she also stated that the lien granted to American Bank under the premium finance statute trumped the lien granted to Cornerstone Bank under article 9 or any other provision that they claimed, bankers lien or any other kind of claim that they claimed in the fund or the bank account that goes to the basis of their claim to have an article 9 security interest. So, in the first opinion, it was recognized that the premium finance statute trumps, and that's the word that was used, trumps any security interest created under article 9. So, that's, I think, what you're getting at. In the second opinion, there was a greater discussion of the limits of the exclusion of 109 D8 and what it means to exclude article 9 consideration with respect to insurance premiums and the context of that and the court stated if there's no article 9 principle because you're perfected under this premium finance statute first, it doesn't, you're always have been ahead. Let's say you get to write, you know, it doesn't happen very often, you get to write the opinion affirming. How do you write it? In three sentences. Which path do you take? I'm asking you which path is the best path? I think the clearest path is that the Tennessee Premium Finance Act gave American Bank a security interest effective and priming all other creditors which of USIG which included Cornerstone Bank and that as a result and that article 9 principles, A, don't apply to them. If they did apply, American Bank would still be ahead of them even if you tried to apply article 9 principles on priority because you had to effectively under an applicable state statute which article 9 itself recognizes. And also article 9 also recognizes the first one who affects first which is the US always has priority anyway. So I remember six different ways of coming at the right  If you just jettison all of that because I'm not advocating I'm saying if you jettison that and look at common law principles we still come out first. We're the first one to perfect because the statute says this is what you need to do to perfect A, B, C, and D. And they happen. So we're there under the Tennessee Finance Act and article 9 or under common law principles as well. So I would, if I was right in the opinion that's what I would say that we prevail under three different scenarios. There is no possible scenario under which Cornerstone Bank could possibly have a lien that was superior to ours. I don't know if that answers your question. I hope it does. I'd like to ask you just back up a little about the term unearned insurance premiums as used in section 112 here. The fact is as I understand the record here, USIG never remitted these funds to the insurer to in fact obtain a policy of insurance. Is that correct? Well, they didn't remit the funds, it's true. But the policy insurance went into effect on November 1st. It did go into effect? Yes. Do you have a record citation for that or is there one in the brief? Yeah, there are several in the brief. The motion for summary judgment attaches to it the premium finance agreement with Sable Bank. So I guess my question is what has to what requirements must be met in order for certain monies under Tennessee law to be uninsured unearned insurance premiums? You rattled them off earlier, policy in place and so on. And specifically, what are those requirements and what case is it that spells those out? There are several cases that spell it out, but I think ULIPAC and JLL liquidating and I think St. James which is a case out of the Eastern United States. And they went to the  or to the agent. If you look at some of the scenarios, it's typical for the money not to go to the insurance company, it usually goes to the agent. There are many cases, if you look through the factual scenarios, that's how the process worked. It went to the producer. So policy in place, money gets wired. Money is wired. And there has to be the right provisions in the premium finance agreement which would ensure that the insurance company could send the notice to you and you're going to send the money to us. And those are all documents in the brochure. That's a helpful answer. I have a quick question for both of you. I know this dispute is controlled by the statute in place at the time of these agreements and so forth. But in 2013 as I understand there was an amendment to our specific statute which says Title 47 Chapter 9 shall govern the relative priorities of security interests in and out. If that was the governing law I take it you would lose? In other words that clarified it in the wrong way for you or not a very helpful way. I know it was an attempt to change the result of this case and I studied the statute and I listened to the speakers and I said you have to incorporate all the rules of Article 9 and the legislative intent as I read and listened to the speakers is to maintain the status quo. And the status quo this Arlene is perfected first. So under Article 9 it's not going to change the result. The only thing the statute it's about priorities. It says you still perfect but it says as a matter of priorities you now have a problem. The only way I think it would change the result would be if there was language in the statute that specifically exempted the exclusion of article 9. We're trying to change the result but in your opinion they did not successfully do so. But everyone agrees this provision doesn't apply to your case. You say you win under Article 9 because you perfected first but isn't there another provision I forget the section that says a bank has first priority in a first priority perfected security interest in any monies that are deposited in one of its accounts? I'm just remembering that from the briefs. There is provisions that tell the bank how to get . Isn't there one that says banks are number first in line if the dollars are deposited? If you're talking about money in the depository account. That's what we have here. That's this. But if our claim, if our interest is perfected first, is existing first, it's going to be. No, here's the statute. It says a security interest held by the bank with which the money is deposited. Well, I agree that that's one of the things, but there are other provisions that talk about priorities there. That one seems on point. The point is if you get into Article 9, that seems like a real problem for you. If Article 9, I don't know if it would be a different lawsuit, a different kind of issue that would come up. Our case is always premised on the perfection of our security under the premium finance act and the inapplicability of Article 9 and the exclusion of interest in this. We also cited I think 9201 which talks about if there's a statute that provides for perfection that would control a situation such as automobile title and so on, that seem to carve out those kind of situations where we haven't perfected it. Mr. Graham? Thank you, Your Honor. I'm not sure whether to say anything else or not. Except I recall when I was coming through law school, we didn't teach the UCC. Or they didn't teach it. How about try this? I mentioned before the statute talks about subsequent purchasers. You acknowledge your client was a subsequent purchaser. Tell me why. You've got to help me understand why that doesn't end the case. The reason that I think it doesn't end the case is that, you know, I like the argument that we kept putting money back into this thing and we ended up worse off. Suppose that factual argument is a loser. Sounds like it's in danger. You're one vote away. What we did wasn't the cause of this problem. What we did was they just messed around and didn't get on the ball and let their money get away. Suppose you have a causation argument is a loser. I kind of like the argument that you all started on. It sounded like when does a premium loan become a premium refund? I mean, this is money in transit. It's either gotten to the insurance company because their agent got it and has then become an unearned premium that our statute, our other statute, says the refund of those is to be paid by the insurer. Or, I mean, but couldn't that mean or its agent? Well, it doesn't say by the agent's bank is where I was trying to go on that. I will be very interested. This is going to end up being a very significant opinion on some point and it looks like it would be significant on several points. I'm surprised there's not Tennessee authority already dealing with this statute. Well, it just hadn't come up. Nobody, this is a sleeper statute. The only Tennessee Supreme Court case they said this doesn't create a private contract. Well, obviously the interests that were behind the passage of it had a very specific thing and a very specific interest in mind and you wouldn't think once it got on the books it would be much of a sleeper. Unless the fact situation just doesn't arise. Well, I don't know whether it arises. This one in fact had never arisen in a case that I've had before. But you're right. I think the legislature had something in mind when they passed that amendment. Well, they had something in mind when the statute came into being in the first place. Well, not much. Although 38 states have such a thing. Sometimes those things slip through. That statute is a mess. This is just the insurance lobby versus the banking lobby. Maybe it's the bank's concern. Well, okay. On that note, is there any more questions? Are there any more questions for Mr. Brown? We appreciate the argument both of you have given and we'll consider the case carefully. I heard this would be a hot bench but I wasn't sure it would be this hot. Thanks for hearing us. It would have been hotter if I hadn't considered the case of thicket. Thanks a lot. All right. Thank you.